**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SANDEEP TRISAL, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>TD BANK, N.A.,<br><br>  Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT** |

  Plaintiff Sandeep Trisal, individually and on behalf of all others similarly situated, alleges as follows based on personal knowledge as to himself, on the investigation of his counsel, and on information and belief as to all other matters:

## INTRODUCTION

  1. Plaintiff brings this Class Action Complaint against TD Bank, N.A. ("TD Bank") for failing to comply with its agreement to personal deposit account holders to refund any overdraft fees assessed to an overdrawn account if the account is brought into a positive available balance within the "grace period" specified by Defendant.

  2. During the time period relevant to this action, TD Bank's relationship with Plaintiff and all of its other personal deposit account holders nationwide has been governed by a standardized set of contractual documents comprised of the "Personal Deposit Account Agreement" and the incorporated "Personal Fee Schedule" – the terms of which were drafted by TD Bank, are amended by TD Bank from time to time at its convenience and complete and sole discretion, and are uniformly imposed by TD Bank on all of its customers. *See* **Exhibit A** hereto (Personal Deposit Account Agreement effective August 2025 (hereinafter, the "Deposit Agreement")), at 2 ("By opening and maintaining an Account with the Bank, you agree to the provisions of this Agreement. . . . This Agreement includes your promise to pay the charges listed on the Personal Fee Schedule and Account Maintenance Information grid and your permission for us to deduct these charges, as earned, directly from your Account.") & 13 ("We reserve the right

to change the terms of this Agreement or change the terms of your Account at any time."); **Exhibit B** hereto (Personal Fee Schedule effective February 2025 (hereinafter, the "Fee Schedule")).

3.  On October 11, 2022, TD Bank publicly announced that it had made "additional enhancements to its overdraft policies and services."[1] Among these "enhancements" was a new policy dubbed "TD Grace Period," which it described as follows: "If a customer's available balance is overdrawn by more than $50, they now have until 11 p.m. ET the next business day to bring their balance back to $0 or above to avoid overdraft fees."[2] Matt Boss, head of consumer products at TD Bank, stated at the time that "[t]hese enhancements are designed to give customers more control over their finances — helping them make financial decisions that are best for them, better manage their money and minimize overdrafts."[3]

4.  On or about October 11, 2022, TD Bank memorialized the new "TD Grace Period" policy in a revised version of the Deposit Agreement, expressly promising account holders that "if you overdraw your Account by more than $50 but make sufficient deposits to bring your available Account balance back to $0 or greater than $0 as of 11:00 p.m. ET on the next Business Day following the day on which the item(s) that overdrew your Account posted to your Account[], we will refund the overdraft fee(s) that were assessed to your Account for those item(s)." *See* **Exhibit C** hereto (version of Deposit Agreement effective October 2022), at 5. Deposit Agreement, at 9. This promise has appeared in each version of the Deposit Agreement released by TD Bank since October 11, 2022, including the version of the Deposit Agreement in effect today. *See* Ex. A.

---

[1] "TD Bank Introduces Additional Overdraft Relief for Customers," TD Bank, N.A., Oct. 11, 2022, *available at* https://stories.td.com/us/en/article/td-bank-introduces-additional-overdraft-relief-for-customers.

[2] *Id.*

[3] "TD Bank Revamps Overdraft Fees, Gives 24-Hour Grace Period," Pymnts.com, Feb. 1, 2022, *available at* https://www.pymnts.com/news/banking/2022/td-bank-revamps-overdraft-fees-gives-24-hour-grace-period/.

5. Since October 11, 2022, Plaintiff has on multiple occasions overdrawn his account by more than $50.00 but made sufficient deposits to bring his available account balance to at least $0.00 as of 11:00 p.m. ET on the business day after his account became overdrawn – and yet TD Bank failed to refund the $35.00 overdraft fees it assessed to Plaintiff's account attributable to those overdrafts. Plaintiff's experience is shared by millions of other TD Bank account holders nationwide, each of whom incurred at least one unrefunded $35.00 overdraft fee attributable to an account that was overdrawn by more than $50.00 but that had an available balance of at least $0.00 as of 11:00 p.m. ET on the next business day.

6. For people living paycheck to paycheck, including many members of the proposed Class (defined below), TD Bank's failure to abide by its promise to refund the overdraft fees at issue in this case has had a serious effect on their everyday lives.

7. By assessing $35.00 overdraft fees for overdrafts that were cured within the "grace period" specified in the Deposit Agreement, TD Bank breached its contractual obligations to Plaintiff and members of the proposed Class, damaging them monetarily.

8. On behalf of himself and the proposed Class, Plaintiff seeks actual, compensatory, consequential, and punitive damages, to the fullest extent permitted by law, to redress TD Bank's wrongful conduct.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 members of the proposed class, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one member of the proposed class is a citizen of a state different from Defendant.

10. Personal jurisdiction and venue are proper because TD Bank maintains its corporate headquarters and principal place of business in Mount Laurel, New Jersey, which is within this judicial District.

## PARTIES

11. Plaintiff Sandeep Trisal is a resident and citizen of South Richmond Hill, New York. At all times mentioned herein, Plaintiff maintained a personal deposit account at TD Bank.

12. Defendant TD Bank, N.A. is incorporated in Delaware and maintains its headquarters and principal place of business in Mount Laurel, New Jersey. TD Bank is a national bank that operates banking centers throughout the United States and maintains personal deposit accounts on behalf of persons nationwide.

## FACTUAL ALLEGATIONS

### I. OVERDRAFT FEES ARE LUCRATIVE FOR TD BANK, BUT DEVASTATING FOR ITS MOST VULNERABLE CUSTOMERS

13. Fee-based overdraft programs cost American consumers at least $23.7 billion each year in the aggregate — more than the loans extended in exchange for such fees, which amount to approximately $21.3 billion annually.[4] Debit card transactions, the most common triggers of overdraft fees, cause an average overdraft of approximately $17 yet trigger an average fee of approximately $35.[5] Most consumers do not learn of an overdraft for two or more days, exposing them to heightened risks of additional overdraft fees in the interim.[6]

14. The overwhelming majority of overdraft fees are paid by chronic overdrafters, who are typically those least able to afford such fees or recover from them once incurred. According to research by the Consumer Financial Protection Bureau, less than one-fifth of account holders — those who incur three or more overdraft fees, totaling over $100, each year — pay more than

---

[4] Leslie Parrish, *Overdraft Explosion: Bank fees for overdrafts increase 35% in two years*, Center for Responsible Lending, Oct. 6, 2009, *available at* http://www.responsiblelending.org/overdraftloans/research-analysis/crl-overdraft-explosion.pdf.

[5] Eric Halperin, Lisa James, and Peter Smith, *Debit Card Danger: Banks offer little warning and few choices as customers pay a high price for debit card overdrafts*, Center for Responsible Lending, at 25, Jan. 25, 2007, *available at* http://www.responsiblelending.org/overdraft-loans/research-analysis/Debit-Card-Danger-report.pdf.

[6] The Pew Charitable Trusts, *Overdrawn: Persistent Confusion and Concern About Bank Overdraft Practices*, June 2014, at 9-10, *available at* http://www.pewtrusts.org/~/media/assets/2014/06/26/safe_checking_overdraft_survey_report.pdf.

90 percent of all overdraft fees triggered by debit cards, checks, and ACH electronic transactions.[7] These "heavy overdrafters" generally have household incomes below the U.S. average and pay nearly a full week's worth of those incomes on overdraft fees each year.[8]

15. Seniors, young adults, military families, and the unemployed are hit particularly hard.[9] For instance, Americans aged 55 and older pay over $6.2 billion in overdraft fees annually[10] — $2.5 billion for debit card/ATM transactions alone.[11] Those who depend the most on Social Security pay $1.4 billion in overdraft fees each year.[12]

16. As the financial toll of fee-based overdraft programs has increasingly and disproportionately fallen on the shoulders of the country's most vulnerable citizens, big banks have steadily become more reliant on overdraft fees as a revenue source. Big banks in the United States with assets exceeding $1 billion reported $7.7 billion in overdraft fee revenue in 2022 alone.[13]

---

[7] Consumer Financial Protection Bureau, *Data Point: Checking Account Overdraft*, at 18, July 2014, *available at* http://files.consumerfinance. gov/f/201407_cfpb_report_data-point_overdrafts.pdf.

[8] "Heavy Overdrafters: A Financial Profile," The Pew Charitable Trusts, Apr. 2016, at 1, *available at* http://www.pewtrusts.org/~/media/assets/2016/04/heavyoverdrafters.pdf.

[9] *See* FDIC Study of Bank Overdraft Programs (Nov. 2008); Leslie Parrish, *Consumers Want Informed Choice on Overdraft Fees and Banking Options, CRL Research Brief*, Apr. 16, 2008, *available at* http://www.responsiblelending.org/overdraft-loans/research-analysis/final-caravan-survey-4-16-08.pdf; *see also* Comments of the Center for Responsible Lending to Board of Governors of the Federal Reserve System on Proposed Rule to Amend Regulation E – Overdraft Practices, Part II.B.1(b), pp. 10-12, Mar. 30, 2009, *available at* http://www.responsiblelending.org/overdraft-loans/policylegislation/regulators/comments-regulation-e_overdraft-practices.pdf.

[10] "Shredded Security: Overdraft practices drain fees from older Americans," Center for Responsible Lending, June 18, 2008, *available at* http://www.responsiblelending.org/overdraftloans/research-analysis/shredded-security.pdf.

[11] *Id.*

[12] *Id.* at 6, Table 1.

[13] https://www.consumerfinance.gov/data-research/research-reports/data-spotlight-overdraft-nsf-revenue-in-q4-2022-down-nearly-50-versus-pre-pandemic-levels/full-report/.

17. For many banks, including TD Bank, overdraft has evolved from an occasional courtesy into a product that they depend upon for revenue. In 2022, for instance, TD Bank generated more than $389 million in revenue attributable to $35.00 overdraft fees, paid in large part by its poorest customers.

II. **TD BANK PROMISES TO REFUND OVERDRAFT FEES IF THE OVERDRAWN ACCOUNT IS IN THE BLACK BY 11:00 P.M. ET ON THE NEXT BUSINESS DAY – AND THEN ROUTINELY FAILS TO DO SO**

18. TD Bank provides retail banking products and services to over 10 million consumers nationwide.

19. Since October 11, 2022, TD Bank has uniformly promised all TD Bank personal deposit account holders nationwide that their accounts "include Overdraft Grace," a feature it describes as "afford[ing] you additional time to bring your available Account balance to $0 or greater than $0 following an overdraft to receive an automatic refund of applicable overdraft fee(s)." Deposit Agreement, at 5.

20. The Deposit Agreement describes the details of the "Overdraft Grace" feature as follows:

> Subject to the below, with Overdraft Grace, if you overdraw your Account by more than $50 but make sufficient deposits to bring your available Account balance back to $0 or greater than $0 as of 11:00 p.m. ET on the next Business Day following the day on which the item(s) that overdrew your Account posted to your Account (the "Overdraft Grace Period"), we will refund the overdraft fee(s) that were assessed to your Account for those item(s). For example, if an item was presented to us for payment on Monday, and it overdrew your available Account balance, you will have until 11:00 p.m. ET on the next Business Day (Tuesday) to bring your available Account balance back to $0 or greater than $0 to receive an automatic refund of overdraft fees assessed for this item. All deposits are subject to our Funds Availability Policy.
>
> Depending on the type of deposit(s) and/or the time of deposit(s), some or all of your deposit(s) may not be available before the Overdraft Grace Period expires. For example, if you make a $500 check deposit and only $100 becomes available within the Overdraft Grace Period, that deposit may not be sufficient to bring your available Account balance back to $0 or greater than $0 within the Overdraft Grace Period. For additional information on when funds become available, please refer to the Processing Order and Funds Availability Policy sections of this Agreement.

> With Overdraft Grace, if you do not make sufficient deposits to bring your available Account balance back to $0 or greater than $0 within the Overdraft Grace Period, then we will not refund overdraft fee(s) for those item(s).
>
> If you further reduce your available Account balance during the Overdraft Grace Period through additional debits from your Account (including pending debit card transactions), this will increase the deposit amount needed to bring your available Account balance to $0 or greater than $0 within the Overdraft Grace Period to receive an overdraft fee refund. For example, if you overdraw your account by $100 on Monday and make a deposit of $150 on Tuesday to bring your available Account balance greater than $0, but on Tuesday, you make a $100 debit card transaction, you will need to deposit an additional $50 as of 11:00 p.m. ET on Tuesday to receive an overdraft fee refund for the item(s) that overdrew your Account on Monday.

Deposit Agreement, at 5.

21. Nevertheless, between October 11, 2022 and the present, TD Bank routinely broke this promise to numerous account holders by failing to refund $35.00 fees assessed to their accounts for overdrafts, even though they had satisfied the terms of TD Bank's "Overdraft Grace" policy by depositing sufficient funds into their accounts to bring the available balances to at least $0.00 as of 11:00 p.m. ET on the next business day following the overdraft.

22. The improperly collected overdraft fee revenue at issue in this case padded TD Bank's corporate profits at the expense of its poorest and most vulnerable account holders. For people living paycheck to paycheck, like many members of the Class, TD Bank's failure to refund the overdraft fees in question not only damaged them monetarily but had a serious effect on their everyday lives.

### III.     PLAINTIFF'S EXPERIENCE

53. On multiple occasions between October 11, 2022 and the present, Plaintiff overdrew his account by more than $50.00 but made sufficient deposits to bring his available account balance to at least $0.00 as of 11:00 p.m. ET on the business day after his account became overdrawn – and yet TD Bank failed to refund the $35.00 overdraft fees it assessed to Plaintiff's account for these overdrafts.

54. For example, on December 23, 2024, after all withdrawals and deposits had posted to his personal deposit account at TD Bank, the available balance of Plaintiff's account was in the red in the amount of -$133.34.

55. On December 24, 2024, Plaintiff received a deposit into his account in the amount of $300.00. This deposit posted to Plaintiff's account at or before 11:00 p.m. ET on December 24, 2025.

56. Also on December 24, 2024, an electronic payment in the amount of $150.00 was withdrawn from Plaintiff's account. This withdrawal posted to Plaintiff's account at or before 11:00 p.m. ET on December 24, 2025.

57. Thus, as of 11:00 p.m. ET on December 24, 2024, with the deposit of $300.00 and the withdraw of $150.00 both having posted to his account, the available balance of Plaintiff's account was in the black in the amount of $16.66.

58. Plaintiff was thereafter assessed a $35.00 overdraft fee for the transaction that had posted into a negative available account balance on December 23, 2024.

59. Because Plaintiff's account had an available balance of at least $0.00 as of 11:00 p.m. ET on December 24, 2024, TD Bank was required, pursuant to the "Overdraft Grace" policy set forth in the Deposit Agreement, to refund the $35.00 overdraft fee assessed to his account for the transaction that had posted into a negative available account balance on December 23, 2024.

60. However, TD Bank failed to refund to Plaintiff's account the $35.00 overdraft fee that it assessed to his account for the transaction that had posted into a negative available balance on December 23, 2024.

61. Plaintiff was also assessed two service fees on December 24, 2024 – a $15.00 "maintenance fee" and a $3.00 "paper statement fee." However, pursuant to TD Bank's published "posting order" policy, both of those fees posted to Plaintiff's account *after* the credits and debits described above had posted and the available balance of Plaintiff's account was determined for purposes of applying the "grace period" policy set forth in the Deposit Agreement. *See* Deposit Agreement, at 3 (setting forth a "processing order" policy, which provides that withdrawals and

deposits will post to personal deposit accounts by 11:00 p.m. ET, after which "non-TD ATM fees, monthly maintenance fees, and paper statement fees" are deducted); *see also id.* at 4 ("The order in which items are processed may affect the total amount of overdraft fees incurred.").

62. By failing to refund overdraft fees assessed to Plaintiff's personal deposit account for overdrafts that were cured as of 11:00 p.m. ET on the following business day, TD Bank breached the Deposit Agreement and damaged Plaintiff monetarily.

## CLASS ALLEGATIONS

63. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

64. The proposed Class is defined as:

> All individuals in the United States who held a personal deposit account with TD Bank that (i) had an available balance of -$50.01 or less on any day between October 11, 2022 and the present (the "Overdrawn Day"); (ii) had an available account balance of $0.00 or more as of 11:00 p.m. ET on the next business day after the Overdrawn Day; and (iii) was assessed, and not refunded, one or more $35.00 overdraft fee(s) attributable to one or more transaction(s) that posted to the account on the Overdrawn Day.

65. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

66. Excluded from the Class are TD Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which TD Bank has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

67. The members of the Class are so numerous that joinder is impractical.  On information and belief, the Class consists of millions of members, the identities of whom are within the knowledge of TD Bank and can be ascertained only by resort to TD Bank's records.

68. The claim of the representative Plaintiff is typical of the claims of the Class in that the representative Plaintiff, like all Class members, was assessed unrefunded $35.00 overdraft fees

by TD Bank for overdrafts that were cured as of 11:00 p.m. ET on the following business day. Plaintiff, like all Class members, has been damaged by TD Bank's misconduct in that he was unlawfully assessed unrefunded overdraft fees in breach of the governing Deposit Agreement. Furthermore, the factual basis of TD Bank's misconduct is common to all Class members and represents a common thread of unlawful, unfair, and unconscionable conduct resulting in injury to all members of the Class.

69. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members. Among the questions of law and fact common to the Class are whether TD Bank:

a. assessed $35.00 overdraft fees for overdrafts that account holders cured by depositing funds into their accounts sufficient to bring the available balances to at least $0.00 as of 11:00 p.m. ET on the following business day; and

b. refunded the overdraft fees described in the part (a) above.

70. Other questions of law and fact common to the Class include:

a. The proper method or methods by which to measure damages;

b. Whether the Class is entitled to interest that has accrued on any improperly unrefunded overdraft fees; and

c. The declaratory and injunctive relief to which the Class is entitled.

71. Plaintiff's claim is typical of the claims of other Class members in that they arise out of the same overdraft policies governed by TD Bank's Deposit Agreement and other related documents in effect since October 11, 2022, and arise out of the same conduct and practice of TD Bank in assessing and failing to refund overdraft fees in the same or substantially similar circumstances. Plaintiff has no interests antagonistic to the interests of any other Class member.

72. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of consumer class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

73. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the enormity of the financial resources of TD Bank, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members would lose their rights by attrition, and TD Bank's misconduct could continue with impunity.

74. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved in this action, individualized litigation would significantly delay and cause expense to all parties and the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

**CLAIM FOR RELIEF**

**BREACH OF CONTRACT**
**(By Plaintiff Individually and On Behalf of the Class Against TD Bank)**

75. Plaintiff repeats and incorporates herein all allegations from the preceding paragraphs.

76. Plaintiff and all members of the Class contracted with TD Bank for bank account deposit services, as embodied in TD Bank's Deposit Agreement and incorporated Fee Schedule.

77. At all times since October 11, 2022, TD Bank has promised Plaintiff and all of its other personal deposit account holders – in plain, clear, and simple language in the Deposit Agreement – that "if you overdraw your Account by more than $50.00 but make sufficient deposits to bring your available Account balance back to $0 or greater than $0 as of 11:00 p.m. ET on the next Business Day following the day on which the item(s) that overdrew your Account posted to your Account [], we will refund the overdraft fee(s) that were assessed to your Account for those

item(s)." *See* Ex. A, at 5. TD Bank's promise to refund any overdraft fees assessed to account holders in these circumstances was an express, material term of the Deposit Agreement.

78. Nonetheless, between October 11, 2022 and the present, TD Bank routinely breached this express, material term of the Deposit Agreement by failing to refund $35.00 overdraft fees assessed to Plaintiff's and numerous other Class members' accounts where their accounts were overdrawn by more than $50.00 but sufficient deposits were made to bring their available account balances back to $0.00 or greater than $0.00 as of 11:00 p.m. ET on the business days following the days on which the item(s) that overdrew their accounts posted to their accounts

79. Specifically, with respect to the named Plaintiff, TD Bank materially breached the Deposit Agreement on or about December 24, 2024 (among other occasions since October 11, 2022) by failing to refund the $35.00 overdraft he was assessed for a transaction on December 23, 2024 that had overdrawn his account by more than $50.00, even though sufficient deposits had been made into his account to bring its available balance up to $16.66 as of 11:00 p.m. ET on December 24, 2024.

80. Likewise, since October 11, 2022, numerous other TD Bank account holders nationwide (the putative Class members in this action) were assessed unrefunded $35.00 overdraft fees attributable to personal deposit accounts that were overdrawn by more than $50.00 but that had an available balance of at least $0.00 as of 11:00 p.m. ET on the next business day.

81. Plaintiff and members of the Class have performed all of the obligations imposed on them under the Deposit Agreement.

82. Plaintiff and members of the Class sustained monetary damages as a result of TD Bank's breaches of the Deposit Agreement, in the manner described herein, between October 11, 2022 and the present.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sandeep Trisal, individually and on behalf of the Class, demands a judgment as follows:

A. Declaring TD Bank's overdraft fee policies and practices described above to be wrongful, unfair, and unconscionable;

B. Awarding actual damages in an amount according to proof;

C. Awarding restitution in an amount equal to the aggregate sum of all unrefunded overdraft fees collected by TD Bank from Plaintiff and the members of the Class in the circumstances described above, to be determined at trial;

D. Disgorgement of the ill-begotten gains TD Bank derived from the misconduct alleged herein;

E. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

F. Awarding costs and disbursements incurred by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

G. Awarding such other relief as this Court deems just and proper.

Dated: October 2, 2025

Respectfully submitted,

/s/ *Philip L. Fraietta*
Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
50 Main Street Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

**HEDIN LLP**
Frank S. Hedin*
fhedin@hedinllp.com
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801

* *Pro Hac Vice* Application Forthcoming

- 14 -

*Counsel for Plaintiff and the Putative Class*